HAROLD LYNN WOLFE )
)
V. ) NO. 2:08-CV-10
)
ESCO JARNIGAN )

## MEMORANDUM AND ORDER

This is an action filed pursuant to 42 U.S.C. § 1983 in which the plaintiff, a jailer for the Hamblen County Sheriff's Department, claims that the defendant, the Sheriff of Hamblen County, refused to promote him to the position of "Road Deputy," i.e., a patrol officer, due to the plaintiff's overt support of the Sheriff's opponent in the 2006 election.

In his complaint, the plaintiff alleges that the Sheriff's refusal to promote him to the position of road deputy is in violation of his First Amendment right to political association. Further, because the Sheriff refused to comply with the directive of the Hamblen County Civil Service Board that plaintiff should be promoted to road deputy, plaintiff avers that the defendant has deprived him of a property interest protected by the United States Constitution in violation of the Fourteenth Amendment.

The defendant has now filed a motion for summary judgment. (Doc. 24). Defendant asserts two bases in support of his motion for summary judgment: (1) since he has been sued in his individual capacity only, and since his action in failing to promote plaintiff was done in his official capacity, this suit should be dismissed; and (2) he is entitled to qualified

immunity.[1]

In his response to that motion, the plaintiff insists that it is he, not the defendant, who should be awarded summary judgment or, alternatively, that this court should find that there are genuine issues of material facts that require a trial. (Doc. 29).

Summary judgment is proper only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[2] If contrary inferences can be drawn from facts which are otherwise undisputed, the non-moving party must be indulged with all possible favorable inferences in his behalf. *Plott v. GM Motors Corp.*, 71 F.3d 1190 (6th Cir. 1995).

## *INDIVIDUAL VERSUS OFFICIAL CAPACITY*

Defendant raised this issue earlier in a motion to dismiss. The court denied the defendant's motion to dismiss in that regard,[3] and there is no need to discuss the matter further. Suffice it to say, under the authority of *Hafer v. Melo*, 502 U.S. 21 (1991), an officer may be held personally liable for damages under 42 U.S.C. § 1983, even though the action upon which the suit is based was done in the officer's official capacity.

## *WAS THERE A CONSTITUTIONAL VIOLATION?*

---

[1] With regard to the Sheriff's defense of qualified immunity, he asserts that he did not violate any constitutional right of plaintiff but, if the court believes otherwise, then he is entitled to qualified immunity.

[2] F.R.Civ.P. 56(c).

[3] Doc. 22.

Before a court reaches the question of qualified immunity, it first must determine if a constitutional violation occurred. *Saucier v. Katz*, 533 U.S. 194 (2011). If there was no constitutional violation, there is no liability under 42 U.S.C. § 1983, and the suit is at an end. If, however, the court finds that there are disputed facts which, if resolved in the plaintiff's favor, show that there was a constitutional violation, then the court proceeds further into the qualified immunity analysis. That analysis is to determine if the constitutional right was "clearly established" at the time of the incident; if the constitutional right was not clearly established, the officer is entitled to summary judgment based upon qualified immunity. *Saucier*, 533 U.S. at 201.

In 1987, plaintiff was hired by the Hamblen County Sheriffs Department as a dispatcher. In 1988, after obtaining his certification as a police officer, he was promoted to the position of road deputy/patrolman. In 1994, plaintiff was promoted to detective. In 1988, he was promoted to Chief of Detectives with the rank of Lieutenant.[4]

In December 2000, while under the influence of an intoxicant, plaintiff wrecked his patrol car, destroying both it and a grocery store sign.[5] Immediately prior to the wreck, plaintiff engaged in radio communications involving two dispatchers at the Sheriffs Department and four unidentified individuals that was unprofessional in the extreme and

---

[4]Complaint, ¶ 4.

[5]Plaintiff's deposition, p. 51.

which revealed that plaintiff was intoxicated.[6]

Plaintiff was charged by the Morristown Police Department with driving while intoxicated, but he ultimately pleaded guilty to driving while impaired.[7]

After the accident, plaintiff tendered his resignation to then-Sheriff Otto Purkey.[8]

In 2005, plaintiff was rehired by Sheriff Purkey as a jailer.[9] He still is employed in that capacity.[10]

The defendant, Esco Jarnigan, qualified to run against Otto Purkey for Hamblen County Sheriff in the 2006 election. Plaintiff openly supported Otto Purkey in his re-election efforts.[11] Defendant defeated Purkey and was sworn into office on September 1, 2006.[12]

During defendant's tenure as Sheriff, the Hamblen County Sheriffs Department has had multiple openings for the position of road deputy. Plaintiff applied for those positions, consistently scoring higher than any other applicant on both the written examination and the physical fitness testing. Nevertheless, the defendant refused to promote plaintiff.[13] As a

---

[6] Ex. 5 to plaintiff's deposition.

[7] Plaintiff's deposition, Ex. 2.

[8] Wolfe deposition, p. 13.

[9] Wolfe deposition, p. 27.

[10] Wolfe deposition, p. 29.

[11] Complaint, ¶ 8.

[12] Complaint, ¶ 9.

[13] Complaint, ¶ 9.

4

result, plaintiff filed grievances with the Hamblen County Sheriffs Department Civil Service board. In July 2007, that body found that the Sheriff had failed to promote plaintiff for political reasons and it ordered the Sheriff to promote plaintiff. Rather than comply with that directive, the Sheriff employed an attorney and requested a review by the Chancery Court for Hamblen County. By an agreed order presented to that court, the decision of the Civil Service Board was declared null and void because no record had been made of the administrative hearing, and the matter was remanded to the Civil Service Board. Another hearing was held in September 2007, and once more the Civil Service Board found that the defendant had violated the Civil Service Act by failing to promote the plaintiff. The Sheriff again refused to comply, asserting that a waiver was required from the Tennessee Peace Officer Standards and Training ("POST")Commission due to the plaintiff's DWI conviction. The Sheriff is the only person who can request such a waiver and he has consistently refused to do so.

At some point in time - the parties did not provide the date to the court - the plaintiff had a meeting with the defendant which the plaintiff secretly recorded. Plaintiff requested the meeting with the Sheriff to discuss "four new positions," presumably four road patrol positions.

If plaintiff's purpose in recording the conversation was to obtain a damning confession from the Sheriff that he had declined to promote plaintiff to road deputy because

5

of plaintiff's political activities, he failed. The transcript[14] of the entire conversation utterly fails to reveal that the Sheriff's refusal was motivated as plaintiff claims in this litigation. The Sheriff clearly had a high opinion of plaintiff's administrative skills as a jailer, and wanted to appoint him supervisor of the night shift and promote him to sergeant. But the Sheriff also made it clear that he did not intend to promote plaintiff to road deputy because of the alcohol-related accident that occurred in December 2000.

On pages two and three of that transcript, the plaintiff flatly tells the Sheriff that he felt like he was being penalized for either of two reasons, either personal or political. The Sheriff responded that it was neither, and finally said:

> If it was anything . . . it could lean towards political because when I run again for the second term it would probably hurt me tremendously, so if anything it might be a little bit political on that aspect, but it's neither one, really. Because you betrayed . . . and, once again, don't take this the harsh way, ok? Lynn Wolfe used poor judgment on that terrible night."[15]

It is clear from the context that the Sheriff's words, "a little bit political," referred to the political harm that would befall *him* when he ran for reelection if he promoted plaintiff to road deputy. The statement had no reference at all to plaintiff's political activities on behalf of Otto Purkey. The Sheriff's statement, even read in isolation, leaves no room for any contrary interpretation. Nevertheless, other statements made during the course of their conversation is further corroboration that the Sheriff was motivated, not by a desire to punish

---

[14]Ex. 9 to plaintiff's deposition.

[15]Plaintiff's deposition, Ex. 9, p.3.

6

plaintiff for political activity on behalf of Otto Purkey, but because of his belief that the plaintiff's conviction for DWI, while operating a Sheriff's cruiser, should preclude him from ever again serving as a road deputy.

But there are facts in the record that support plaintiff's allegations that the Sheriff refused to promote him for political reasons. In his affidavit filed in opposition to defendant's motion for summary judgment, plaintiff states that defendant "told me several times that he will not promote me to road deputy because I supported Sheriff Purkey in 2006."[16] The court has read the plaintiff's pretrial deposition in its entirety in an effort to determine if plaintiff's affidavit contradicted his deposition testimony. In at least three places in that deposition, plaintiff testified that the Sheriff refused to promote him because of his political activities on behalf of Otto Purkey.[17] Although the Sheriff's statements made during the course of the secretly recorded conversation certainly call into question the truthfulness of plaintiff's testimony in his affidavit and deposition regarding the statements he attributes to the Sheriff, it is the prerogative and function of the jury to weigh and resolve conflicting testimony. If those statements are found by the jury to be true, it would follow that the Sheriff failed to promote plaintiff to road deputy due to plaintiff's political activities on behalf of Otto Purkey which, of course, is a violation of the First Amendment Right to political association.

The Sheriff argues that plaintiff is not qualified under state law to be a police officer.

---

[16] Doc. 31, ¶ 8.

[17] Doc. 31, attachment 2.

In this regard, he notes that Tenn. Code Ann. § 38-8-106 requires that any person desiring to be a police officer may not have been convicted of (among other things), "any violation of . . . state laws . . . relating to . . . liquor or controlled substances."[18] However, another statute gives the POST Commission the authority to waive any of the qualifications or standards required of peace officers.[19] It is undisputed that the Sheriff is the only official in Hamblen County who can request a waiver from the POST Commission and it is also undisputed that he has refused to do so. If his refusal is motivated by the plaintiff's political activities, then his refusal to request a waiver is substantively identical to his refusal to promote the plaintiff, and the legal effect would be the same.

The Sheriff's refusal to comply with the directive of the Civil Service Board is not *per se* a constitutional violation. If the jury should find that the Sheriff failed to promote plaintiff for some reason *other* than the plaintiff's political activities, there could be no constitutional violation based on his refusal to obey the Civil Service Board's directive that he promote the plaintiff. Presumably plaintiff has a recourse for the Sheriff's recalcitrance, but that recourse would be in state court; again, there could be no federal constitutional violation.

---

[18]In ruling upon defendant's earlier motion to dismiss, the court expressed some confusion regarding the word "liquor," at least as regards to the actual substance that induced plaintiff's intoxication. After considering the matter further, although the statute undeniably is a bit inartful, in context the statute effectively refers to *alcohol* and would embrace a conviction for DWI.

[19]Tenn. Code Ann. 38-8-104(d).

8

## *IS THE SHERIFF ENTITLED TO QUALIFIED IMMUNITY?*

Having found that there are disputed facts which, if resolved in plaintiff's favor, constitute a violation of the First Amendment, under *Saucier v. Katz, supra*, the court must now determine if the Sheriff is entitled to qualified immunity.

The right of political activity and political association is a clearly established right under the First Amendment. In *Sowards v. Loudon County, Tennessee*, 203 F.3d 206 (6th Cir. 2000), the Court of Appeals held that a sheriff was not entitled to qualified immunity for terminating an employee for political activity. *Id*., 439-40. There is no legal difference between terminating an employee for political activity and refusing to promote an otherwise qualified employee for political activity. Therefore, under the authority of *Sowards, supra*, the Sheriff is not entitled to qualified immunity in the event the jury resolves the factual issues against him.

## *PLAINTIFF'S CLAIM UNDER THE FOURTEENTH AMENDMENT*

If plaintiff has any claim under the Fourteenth Amendment, it is for a violation of substantive due process, not procedural. "State-created contract rights, while assuredly protected by procedural due process, are not protected by substantive due process." *Charles v. Baesler*, 910 F.2d 1349 (6th Cir. 1990). Thus, defendant's motion for summary judgment with respect to plaintiff's claim under the Fourteenth Amendment will be granted.

## *CONCLUSION*

Defendant's motion for summary judgment (Doc. 24) is granted with regard to plaintiff's claim under the Fourteenth Amendment; otherwise, defendant's motion for

summary judgment is denied.

Plaintiff's motion for summary judgment (Doc. 29) is denied.

SO ORDERED:

                                                    s/ Dennis H. Inman
                                        United States Magistrate Judge

10

Case 2:08-cv-00010-DHI   Document 33   Filed 03/26/09   Page 10 of 10   PageID #: 447