UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE


| | | |
|---|---|---|
| HAROLD LYNN WOLFE | ) | |
| | ) | |
| V. | ) | NO. 2:08-CV-10 |
| | ) | |
| ESCO JARNIGAN | ) | |

### **MEMORANDUM AND ORDER**

This court earlier denied the defendant's motion for summary. The defendant filed an interlocutory appeal that focused only upon the "*Mt. Healthy*" defense, *viz.*, that the defendant would have taken precisely the same action even if the plaintiff "had not engaged in the protected political activity."[1]. The Court of Appeals noted that the defendant failed to raise the *Mt. Healthy* defense before this court, as a result of which it declined to consider it upon defendant's interlocutory appeal. Defendant, with plaintiff's agreement, has filed a second motion for summary judgment that now raises the *Mt. Healthy* defense. Because of the odd procedural posture of this case, most of the other defenses raised by defendant, e.g., qualified immunity, also remain viable.

### *SUMMARY JUDGMENT STANDARD*

Under F.R.Civ.P. 56(c), summary judgment is proper only where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." The

---

[1] *Mt. Healthy City Sch. Dist. Bd. Of Educ. V. Doyle*, 429 U.S. 274 (1977).

court must view the facts in the record, and all inferences that reasonably can be drawn from those facts, in a light that is most favorable to the non-moving party.[2] The court may not judge the credibility of witnesses or determine the truth of any matter in dispute; in other words, the court may not weigh the evidence.[3]

The party opposing a motion for summary judgment may not rest on the allegations of his complaint; rather, he must affirmatively present competent evidence sufficient to establish a genuine issue of material fact that necessitates a trial.[4] A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [party opposing the motion]."[5] If, after a trial, a reasonable jury could not return a verdict for the non-moving party, summary judgment should be granted.[6]

*FACTS*

In 1987, plaintiff was hired by the Hamblen County Sheriffs Department as a dispatcher. In 1988, after obtaining his certification as a police officer, he was promoted to the position of road deputy/patrolman. In 1994, plaintiff was promoted to detective. In 1998, he was promoted to Chief of Detectives with the rank of Lieutenant.[7]

---

[2] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[3] *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249 (1986).

[4] *Anderson, supra*, at 256.

[5] *Anderson, supra*, at 252.

[6] *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002).

[7] Complaint, ¶ 4.

In December 2000, while he was drunk, plaintiff wrecked his patrol car, destroying both it and a grocery store sign.[8] Immediately prior to the wreck, plaintiff engaged in radio communications with two dispatchers at the Sheriffs Department and four unidentified individuals which were unprofessional in the extreme and which revealed that plaintiff was highly intoxicated.[9]

Plaintiff was charged by the Morristown Police Department with driving while intoxicated, but he ultimately pleaded guilty to driving while impaired.[10]

After the accident, plaintiff tendered his resignation to then-Sheriff Otto Purkey.[11]

In 2005, plaintiff was rehired by Sheriff Purkey as a jailer.[12] He still is employed in that capacity.[13]

The defendant, Esco Jarnigan, qualified to run against Otto Purkey for Hamblen County Sheriff in the 2006 election. Plaintiff openly supported Otto Purkey in his re-election efforts.[14] Defendant defeated Purkey and was sworn into office on September 1, 2006.[15]

During defendant's tenure as Sheriff, the Hamblen County Sheriffs Department has

---

[8] Plaintiff's deposition, p. 51.

[9] Ex. 5 to plaintiff's deposition.

[10] Plaintiff's deposition, Ex. 2.

[11] Wolfe deposition, p. 13.

[12] Wolfe deposition, p. 27.

[13] Wolfe deposition, p. 29.

[14] Complaint, ¶ 8.

[15] Complaint, ¶ 9.

had multiple openings for the position of road deputy. Plaintiff applied for those positions, consistently scoring higher than any other applicant on both the written examination and the physical fitness testing. Nevertheless, the defendant refused to promote plaintiff.[16] As a result, plaintiff filed grievances with the Hamblen County Sheriffs Department Civil Service board. In July 2007, that body found that the Sheriff had failed to promote plaintiff for political reasons and it ordered the Sheriff to promote plaintiff. Rather than comply with that directive, the Sheriff employed an attorney and requested a review by the Chancery Court for Hamblen County. By an agreed order presented to that court, the decision of the Civil Service Board was declared null and void because no record had been made of the administrative hearing, and the matter was remanded to the Civil Service Board. Another hearing was held in September 2007, and once more the Civil Service Board found that the defendant had violated the Civil Service Act by failing to promote the plaintiff. The Sheriff again refused to comply, asserting that a waiver was required from the Tennessee Peace Officer Standards and Training ("POST") Commission due to the plaintiff's DWI conviction. The Sheriff is the only person who can request such a waiver and he has consistently refused to do so.

    At some point in time - the parties did not provide the date to the court - the plaintiff had a meeting with the defendant which the plaintiff secretly recorded. Plaintiff requested the meeting with the Sheriff to discuss "four new positions," presumably four road patrol

---

[16]Complaint, ¶ 9.

positions.

If plaintiff's purpose in recording the conversation was to obtain a damning confession from the Sheriff that he had declined to promote plaintiff to road deputy because of plaintiff's political activities, he failed. The transcript[17] of the entire conversation utterly fails to reveal that the Sheriff's refusal was motivated as plaintiff claims in this litigation. The Sheriff clearly had a high opinion of plaintiff's administrative skills as a jailer, and wanted to appoint him supervisor of the night shift and promote him to sergeant. But the Sheriff also made it clear that he did not intend to promote plaintiff to road deputy because of the alcohol-related accident that occurred in December 2000.

On pages two and three of that transcript, the plaintiff flatly tells the Sheriff that he felt like he was being penalized for either of two reasons, either personal or political. The Sheriff responded that it was neither, and finally said:

> If it was anything . . . it could lean towards political because when I run again for the second term it would probably hurt me tremendously, so if anything it might be a little bit political on that aspect, but it's neither one, really. Because you betrayed . . . and, once again, don't take this the harsh way, ok? Lynn Wolfe used poor judgment on that terrible night."[18]

It is clear from the context that the Sheriff's words, "a little bit political," referred to the political harm that would befall *him* when he ran for reelection if he promoted plaintiff to road deputy. The statement had no reference at all to plaintiff's political activities on

---

[17]Ex. 9 to plaintiff's deposition.

[18]Plaintiff's deposition, Ex. 9, p.3.

5

behalf of Otto Purkey. The Sheriff's statement, even read in isolation, leaves no room for any contrary interpretation. Moreover, other statements made during the course of that recorded conversation is further corroboration that the Sheriff was motivated, not by a desire to punish plaintiff for political activity on behalf of Otto Purkey, but because of his belief that the plaintiff's conviction for DWI, while operating a Sheriff's cruiser, should preclude him from ever again serving as a road deputy.

*INDIVIDUAL VERSUS OFFICIAL CAPACITY*

This court's previous decision that the defendant was properly sued in his individual capacity was addressed by the Court of Appeals, and this court's decision was affirmed. This facet of defendant's motion for summary judgment remains DENIED.

*PLAINTIFF'S CLAIM UNDER THE FOURTEENTH AMENDMENT*

If plaintiff has any claim under the Fourteenth Amendment, it is for a violation of substantive due process, not procedural. "State-created contract rights, while assuredly protected by procedural due process, are not protected by substantive due process." *Charles v. Baesler*, 910 F.2d 1349 (6th Cir. 1990). Thus, defendant's motion for summary judgment with respect to plaintiff's claim under the Fourteenth Amendment is granted.

*IS DEFENDANT ENTITLED TO QUALIFIED IMMUNITY?*

Before a court reaches the question of qualified immunity, it first must determine if a constitutional violation occurred. *Saucier v. Katz*, 533 U.S. 194 (2011). If there was no constitutional violation, there is no liability under 42 U.S.C. § 1983, and the suit is at an end. If, however, the court finds that there are disputed facts which, if resolved in the plaintiff's

favor, show that there was a constitutional violation, then the court proceeds further into the qualified immunity analysis. That analysis is to determine if the constitutional right was "clearly established" at the time of the incident; if the constitutional right was not clearly established, the officer is entitled to summary judgment based upon qualified immunity. *Saucier*, 533 U.S. at 201.

The Sheriff argues that plaintiff is not qualified under state law to be a police officer. In this regard, he notes that Tenn. Code Ann. § 38-8-106 requires that any person desiring to be a police officer may not have been convicted of (among other things), "any violation of . . . state laws . . . relating to . . . liquor or controlled substances."[19] However, another statute gives the POST Commission the authority to waive any of the qualifications or standards required of peace officers.[20] It is undisputed that the Sheriff is the only official in Hamblen County who can request a waiver from the POST Commission and it is also undisputed that he has refused to do so. If his refusal is motivated by the plaintiff's political activities, then his refusal to request a waiver is substantively identical to his refusal to promote the plaintiff, and the legal effect would be the same.

The Sheriff's refusal to comply with the directive of the Civil Service Board is not *per se* a constitutional violation. If the jury should find that the Sheriff failed to promote plaintiff for some reason *other* than the plaintiff's political activities, there could be no constitutional violation based on his refusal to obey the Civil Service Board's directive that he promote the plaintiff. Presumably

---

[19]In ruling upon defendant's earlier motion to dismiss, the court expressed some confusion regarding the word "liquor," at least as regards to the actual substance that induced plaintiff's intoxication. After considering the matter further, although the statute undeniably is a bit inartful, in context the statute effectively refers to *alcohol* and would embrace a conviction for DWI.

[20]Tenn. Code Ann. 38-8-104(d).

7

plaintiff has a recourse for the Sheriff's recalcitrance, but that recourse would be in state court; again, there could be no federal constitutional violation.

The *Mt. Healthy* defense aside, and assuming that the sheriff refused to promote plaintiff because plaintiff campaigned for the sheriff's opponent in the election, the court must now determine if the Sheriff is entitled to qualified immunity.

The right of political activity and political association is a clearly established right under the First Amendment. In *Sowards v. Loudon County, Tennessee*, 203 F.3d 206 (6th Cir. 2000), the Court of Appeals held that a sheriff was not entitled to qualified immunity for terminating an employee for political activity. *Id*., 439-40. There is no legal difference between terminating an employee for political activity and refusing to promote an otherwise qualified employee for political activity. Therefore, under the authority of *Sowards, supra*, the Sheriff is not entitled to qualified immunity, again disregarding for the moment the *Mt. Healthy* defense.

## *THE MT. HEALTHY DEFENSE*

In a First Amendment retaliation case, the plaintiff bears the initial burden of showing (1) that his conduct was constitutionally protected, and (2) that the conduct was a "substantial factor," or a "motivating factor," in the employer's adverse employment action. If the plaintiff makes these showings, thereby making a *prima facie* case of retaliation, the burden shifts to the defendant employer to prove that he would have taken the same action even if the plaintiff had not engaged in the protected conduct.[21] Plaintiff's political activity on behalf of the Sheriff's opponent was

---

[21]*Mt. Healthy,* 429 U.S. at 287; *Ward v. Athens City Bd. Of* Ed., 1999 WL 623730 (6th Cir. 1999); *Harris v. Butler Co. Ohio*, 2009 WL 2628501 (6th Cir. 2009).

constitutionally protected.[22] Plaintiff, therefore, has crossed that hurdle.

The next question is whether the plaintiff has demonstrated that his political activity on behalf of the Sheriff's opponent was a substantial or motivating factor in the Sheriff's refusal to promote plaintiff to the position of road deputy. In its previous Memorandum and Order, this court held that plaintiff had done so, referring to his affidavit filed in opposition to the motion for summary judgment[23] in which the plaintiff flatly stated that the Sheriff told him "several times that he will not promote me to road deputy because I supported Sheriff Purkey in 2006." This court also declared in that Memorandum and Order that the plaintiff's pretrial discovery deposition had been read to determine if plaintiff's affidavit contradicted his deposition testimony and, in at least three places in that deposition, "plaintiff testified that the Sheriff refused to promote him because of his political activities on behalf of Otto Purkey."[24] That deposition has been read once more, this time in light of the *Mt. Healthy* defense raised by the defendant. The court is now constrained to acknowledge that the plaintiff's deposition does **not** state that the Sheriff refused to promote plaintiff because of his "political activities on behalf of Otto Purkey."

As previously mentioned, plaintiff surreptitiously recorded a conversation he had with the Sheriff. In that conversation, the Sheriff acknowledged that he would not promote plaintiff to the position of road deputy because of the adverse political consequences that could befall him. He said absolutely nothing about the plaintiff's political activity on behalf of the previous sheriff.

---

[22]*Sowards v. Loudon County, Tennessee*, 203 F.3d 206 (6th Cir. 2000).

[23]Doc. 31, ¶ 8.

[24]Memorandum and Order, Doc. 33, p. 7.

The questions and answers during the plaintiff's discovery deposition pertinent to the Sheriff's motivation in refusing to promote him begin at page 34 of the deposition:[25]

*Page 34, Line 25 - Page 35, Line 8:*

Plaintiff has no information that the Sheriff has fired anyone because that person supported Otto Purkey in the election, and neither can he recall that anyone was demoted because of his support of Otto Purkey.

*Page 36, Line 8:*

Sheriff Jarnigan did not know that plaintiff was recording their conversation.

*Page 36, Lines 15-21*:

When questioned if he had asked the Sheriff whether or not it was "personal or political" that the Sheriff was refusing to request a Post waiver, plaintiff answered, "I had previously asked him probably seven or eight times prior to me recording him."

*Page 37, Lines 3-10*:

Plaintiff testified that he accused the Sheriff during the recorded conversation that he was refusing to promote him because it was "personal and political," to which the Sheriff responded (to plaintiff) that, "It would be political because when he ran for sheriff it would – it would probably hurt him."

*Page 48, Lines 3-7*:

The Sheriff asked that plaintiff take the appropriate test to be promoted to the position of Assistant Chief Administrator of the jail.

*Page 50, Line 6-12*:

---

[25]Doc. 31-2.

10

That position would have been a promotion.

*Page 50, Line 17 - Page 53, Line 9*:

Plaintiff was asked by defendant's counsel upon what information or basis did he rely to support his allegation that the Sheriff was refusing to promote him because of his "affiliation with Otto Purkey." Plaintiff answered, "Cause he told me that out of his own mouth. He wrote brochures on it" and "He told me out of his own mouth."

The "brochure"[26] of which plaintiff spoke was a campaign pamphlet distributed by the Sheriff during the election campaign. That pamphlet or brochure merely described the alcohol-related accident of a deputy sheriff who resigned, and who was later rehired by the incumbent, Otto Purkey.

The Sheriff's statements from "his own mouth" were described by plaintiff as follows:

> He told me seven, eight times previous to me taping him – the reason that I taped him was because that he kept telling me the same answer every time; that he was not going to promote me because it was political reasons. And that's the reason why I went into his office and sat down with him because I wanted it on tape because I want a fair shake at the rest of the promotions just like everyone else. I have due process under the Civil Service Act that he cannot show why he can't promote me other than his political reasons. That is his sole purpose of not promoting me because it's political.

*Page 53, Lines 13-25*:

Plaintiff acknowledged that it would hurt the Sheriff politically if he rehired as a deputy a man who had earlier resigned after pleading guilty to DUI.

*Page 54, Lines 7-25*:

When asked if he understood that the difference between a refusal to rehire, for personal

---

[26] Doc. 34-1.

11

political considerations, a deputy who had resigned after his conviction for DUI, and a refusal to rehire the deputy because he had campaigned for the Sheriff's opponent, plaintiff answered that he understood that distinction. When asked which of these motivated the Sheriff in his refusal to promote him, plaintiff answered, "I feel like he's holding a personal grudge against me because he told me himself . . . that he was not putting me back on the road; that it was political." When pressed to acknowledge that the Sheriff's refusal was motivated by his personal political considerations, as opposed to a retaliatory motive, plaintiff merely answered, "You'll never make me believe that, no."

Significantly, plaintiff never testified during his deposition that the Sheriff ever flatly told him, or even hinted, that he was refusing to promote plaintiff because plaintiff had campaigned for Otto Purkey. The most to which plaintiff testified was that the Sheriff had "political reasons" in refusing to promote him.

When considering a motion for summary judgment, the court must indulge the non-moving party with all possible favorable inferences from the facts. Thus the question: Can this court – or ultimately a jury – *reasonably* infer from plaintiff's deposition testimony that the defendant ever said, or suggested, that he was refusing to promote plaintiff because of plaintiff's political efforts on behalf of the Sheriff's opponent? The answer is, "No." Indeed, the only reasonable inference that can be drawn from plaintiff's testimony throughout his deposition regarding the Sheriff's motivation is that plaintiff himself believed that the Sheriff was motivated by *personal* political concerns which the plaintiff (apparently) believed, erroneously, to be impermissible. This determination, unfortunately, contradicts what this court said in its previous

Memorandum and Order.[27]

And that brings us to plaintiff's affidavit filed in opposition to the motion for summary judgment in which he unequivocally recites that he was told by the Sheriff "several times" that he would not be promoted to road deputy because he "supported Sheriff Purkey in 2006." That statement cannot be reconciled with plaintiff's pretrial deposition testimony.

A party may not rely upon an affidavit that contradicts his earlier deposition testimony to create an issue of fact.[28] This is precisely what plaintiff's affidavit does. Throughout his deposition, he had repeated opportunities to state that the Sheriff told him that he was not being promoted because of plaintiff's support of Otto Purkey in the previous election, and he eschewed each of those opportunities. Rather, he testified that it was only for "political reasons" that the Sheriff refused to promote him. As already discussed, the only reasonable inference that can be drawn from the plaintiff's deposition testimony is that plaintiff himself believed that the Sheriff was improperly motivated by the potential adverse political consequences that would befall him if he promoted to the position of patrol officer a man who had pleaded guilty to DUI.

A reasonable jury could not return a verdict for the plaintiff.[29] Plaintiff has failed to carry his burden of coming forward with evidence to establish a *prima facie* case that the Sheriff's

---

[27] Resisting the urge to attempt to explain the inconsistency by saying something to the effect of, "I know that you believe you understand what you think I said, but I'm not sure you realize that what you heard is not what I meant," this court simply opts for the hard truth: plaintiff's discovery deposition was not read carefully enough the first time around. The explanation, weak though it may be, is that the plaintiff's deposition testimony was not felt to be nearly as important in light of the issues framed by the first motion for summary judgment.

[28] *Farrell v. Automobile Club*, 870 F.2d 1129, 1132 (6th Cir. 1989).

[29] *Burchett, supra,* 310 F.3d at 942.

13

motivation in refusing to promote him to the position of road deputy was the plaintiff's political activity on behalf of the Sheriff's opponent in the preceding election.

*CONCLUSION*

Defendant's motion for summary judgment (Doc. 53) is **GRANTED** and plaintiff's suit is **DISMISSED**.

SO ORDERED:

                                            s/ Dennis H. Inman
                                      United States Magistrate Judge